# In the United States Court of Federal Claims

No.  10-496C

(Filed:  October 26, 2010)

| | |
|---|---|
| **ANGELICA TEXTILE SERVICES, INC.,** | Protest of procurement actions taken by a contracting officer of the Department of Veterans Affairs; jurisdiction under the third prong of 28 U.S.C. § 1491(b)(1); extension of an existing contract under FAR § 52.217-8; implementation of the Veterans Benefits, Health Care, and Information Technology Act of 2006; priority of competing federal contracting preferences; equitable relief |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant.** | |

Lawrence Block, Stinson Morrison Hecker LLP, Washington, D.C., for plaintiff.

Austin M. Fulk, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Harold W. Askins, III, United States Department of Veterans Affairs, Atlanta, GA.

## OPINION AND ORDER

LETTOW, Judge.

Jurisdictionally, this bid protest rests upon the so-called third prong of 28 U.S.C. § 1491(b)(1).[1]  Plaintiff, Angelica Textile Services, Inc. ("Angelica" or "Angelica Textile"), alleges that the Department of Veterans Affairs ("DVA" or "the Department") is proceeding with a procurement of laundry services for six veterans' hospitals in contravention of law and regulation.  Angelica is the current incumbent contractor for such services, and it in essence protests the government's restriction of the solicitation for the follow-on contract to offerors

---

[1]The first two portions of Section 1491(b)(1) address pre-award and post-award bid protests, constituting actions "by an interested party" either "objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract."  28 U.S.C. § 1491(b)(1).  By contrast, the third portion of the Section concerns protests involving "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  *Id.*

eligible under the AbilityOne program.[2]  This case raises questions about the priority of the federal contracting preference accorded participants under the AbilityOne program as contrasted to that given veteran-owned ("VO") and service-disabled veteran-owned ("SDVO") entities who qualify under the Veterans Benefits Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act"), Pub. L. No. 109-461, tit. V, 120 Stat. 3403, 3435 (codified at 38 U.S.C. §§ 8127-28).  Pending before the court are cross-motions by the parties for judgment on the administrative record.

## FACTS[3]

### A.  *The Laundry Services Contract*

Angelica Textiles provides laundry services for six hospitals located in the southeastern area of the United States, for the Department, under a contract which was scheduled to terminate on March 31, 2010.[4]  AR 1-85 to 90.[5]  On January 12, 2010, two and one-half months before Angelica's contract was scheduled to expire, the Department issued a "Sources Sought Notification" to identify businesses interested in providing laundry services at the locations then served by Angelica.  AR 7-117 to 118.  The Department requested responses by January 22, 2010.  *Id*.

Among the parties that expressed an interest in the laundry services contract was the National Institute for the Severely Handicapped ("NISH"), a nonprofit agency whose mission is to create employment opportunities for the disabled.  NISH participates in the AbilityOne

---

[2]The Javits-Wagner-O'Day Act, 41 U.S.C. §§ 46-48c, establishes an independent federal agency, The Committee For Purchase From People Who Are Blind Or Severely Disabled ("Committee"), which in turn creates and maintains a list (the "AbilityOne Procurement List" or "List") of products and services that must be purchased by federal governmental agencies from qualifying nonprofit entities employing handicapped and disabled persons when a need for those particular products or services arises.

[3]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement and the parties' evidentiary submissions related to prejudice and equitable relief.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (noting that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[4]The contract initially ran until March 31, 2006, and contained four one-year option contracts, each of which was exercised.  AR 1-85 to 90, 3-103 to 6-113.

[5]"AR __" refers to the administrative record filed with this court in accord with RCFC 52.1(a).  The administrative record has been subdivided into tabs.  The first number in a citation to the administrative record refers to a particular tab, and the number after the hyphen refers to the particular page number of the administrative record, *e.g.*, "AR 5-026."  The pages of the administrative record are paginated sequentially without regard to the tabs.

Program, which provides employment opportunities for people who are blind or have other significant disabilities by procuring federal contracts for goods and services.

NISH sent two e-mails to the Department before the deadline of January 22, 2010, stating its possible interest in the procurement.  AR 8-171 (E-mail from George Patterson to Rufus Gates (Jan. 19, 2010)) (NISH "may have an interest and wanted to verify the time frames."); AR 8-172 (E-mail from George Patterson to Robin Jones (Jan. 19, 2010)) (NISH "may [have] an interest if the timefr[a]mes will work.").  However, NISH did not provide a required "capabilities statement" until after the deadline, on January 28, 2010.  *See* AR 9-178 to 189 (NISH Capabilities Statement (Jan. 28, 2010)); Dep. of Robin Jones, Contracting Officer ("Jones Dep.") 10:17-10:20, 25:4-25:11 (Aug. 23, 2010).[6]

On January 25, 2010, before receiving NISH's required capabilities statement, Ms. Jones as the Contracting Officer determined that the Department should award the new laundry contract to NISH on a sole-source basis.  AR 8-131 (Dynamic Small Business Search Results – Industrial Launderer NAICS code 812332 (Jan. 25, 2010)) ("It is this recommendation that this requirement be sole sourced IAW FAR Part 8-Required Sources of Suppliers and Services, FAR Part 8.7 Acquisition from Non-Profit Agencies employing people who are blind or severely disabled."); Jones Dep. 27:23-28:19.

To award the laundry services contract to NISH on this basis, the services involved had to be placed on the list of government goods and services that were restricted to the AbilityOne program — the AbilityOne Procurement List.  *See* 41 U.S.C. § 48; Jones Dep. 60:14-61:1. Placing the services on the AbilityOne Procurement List required time, specifically more time than that which remained on Angelica's contract.[7]  To ameliorate that problem, Ms. Jones invoked a clause in Angelica's contract allowing the government to "require continued performance of any services" for a period "not [to] exceed 6 months."  48 C.F.R. ("FAR") § 52.217-8.  In a letter dated February 24, 2010, Ms. Jones informed Angelica that, "[i]n accordance with FAR § 52.217-8, Option to Extend Services (NOV 1999)," Angelica's laundry services contract would be "extended for the period of performance through 30 September 2010."  AR 10-191 (Letter to Jeff Hoffman from Robin Jones (Feb. 24, 2010)).

Although FAR § 52.217-8 provides that the government may unilaterally "require" a contract extension of six months' duration, Ms. Jones told Angelica that a "bilateral modification

---

[6]Ms. Jones' deposition is set out as Exhibit A to Plaintiff's Motion for Judgment on the Administrative Record.  At a hearing held on August 4, 2010, to consider Angelica's motion for a temporary restraining order, the court granted a request by Angelica that it be allowed to depose Ms. Jones for a limited time not to exceed ninety minutes.  Hr'g Tr. 48:6 to 52:1 (Aug. 4, 2010).  That request was granted on the ground that the administrative record was completely devoid of any information, contemporaneous or otherwise, regarding the Department's rationale and purpose in extending Angelica's contract.  *Id.*

[7]Even if NISH had not expressed interest in the laundry services contract, an extension of Angelica's contract would have been required because the initiation of the process for securing a new contract had been delayed.  Jones Dep. 19:2-19:25.

. . . for this action [would] follow," AR 10-191, and on March 12, 2010, a bilateral modification
to Angelica's contract was signed by both parties.  AR 10-194 (Amendment of
Solicitation/Modification of Contract).  Angelica averred that Ms. Jones represented that the
reason for the contract extension was to allow the Department to prepare a Request for Proposals
("RFP") for full and open competition for the laundry services contract, Hr'g Tr. 14:10 to 15:2
(Aug. 4, 2010), but no independent evidence supports the claim that such a representation was
made.

### B.  *The Veterans Benefits Act*

The Veterans Benefits Act, signed on December 22, 2006, directs the Secretary for
Veterans Affairs to "give priority to a small business concern owned and controlled by veterans,
if such business concern also meets the requirements of that contracting preference."  38 U.S.C.
§ 8128(a).  To implement the Veterans Benefits Act, the Department established the "Veterans
First Contracting Program" on June 20, 2007.  *See* AR 38-540 to 541 (New Guidelines for
Placing Items and Services on the AbilityOne Procurement List (Apr. 28, 2010) ("New
Guidelines")).  The program directed the Department to consider service-disabled veteran-owned
small businesses ("SDVOSB") and veteran-owned small businesses ("VOSB") as a first and
second priority when satisfying its acquisition requirements.  *Id.* at 38-541.  A final
implementing rule establishing changes to the Department's acquisition regulations was made
effective January 7, 2010.  *See* 74 Fed. Reg. 64619-01 (Dec. 8, 2009) (codified in scattered
sections of 48 C.F.R. Subparts 802, 804, 808, 809, 810, 813, 815, 817, 819, 828, and 852).

To accommodate the Veterans Benefits Act, as implemented by the Department's new
acquisition regulations, the Department changed the internal process by which procurements
could be added to the AbilityOne List.  A Departmental Information Letter titled "New
Guidelines for Placing Items on the AbilityOne Procurement List" explained:

> [A]ll items currently on the AbilityOne Procurement List as of January 7,
> 2010 will continue to take priority over the contracting benefits mandated
> by [the Veterans Benefit Act].  However, all new requirements will be
> subject to the contracting preferences mandated by [the Veterans Benefit
> Act] prior to being considered for placement with the AbilityOne Program.
>  . . . To ensure appropriate business opportunities are properly afforded to
> SDVOSBs and VOSBs, all [contracting officers] must adhere to the authorities
> and requirements of [the Veterans Benefit Act] (38 U.S.C. 8127-8128) prior to
> placing new requirements on the AbilityOne Procurement List.

AR 38-541.

Ms. Jones, the contracting officer handling the laundry services procurement, was aware
that SDVO and VO small businesses had priority.  She sent an e-mail on February 4, 2010,
stating: "Items not currently on the AbilityOne Procurement List: (New Requirement) [a]re
subject to the contracting preferences mandated by [the Veterans Benefit Act] P.L. 109-461,
[those preferences being for a] SDVOSB and VOSB, prior to being considered for AbilityOne."

AR 22-279 (E-mail from Robin Jones to George Patterson (Feb. 4, 2010)).[8]  Ms. Jones understood that if a requirement could be met by a SDVO small business, it would have priority in winning the contract.  Jones Dep. 61:19-62:12.

      The New Guidelines for Placing Items on the AbilityOne Procurement List direct contracting officers to take a series of steps to explore whether SDVO and VO entities could provide the needed services before proposing a requirement for the AbilityOne Procurement List. Among the new steps, a contracting officer is required to perform market research in accord with FAR Part 10 and Department of Veterans Affairs Acquisition Regulations ("VAAR") Part 810 and to prepare a determination and findings which document the requirement, the results of the market research performed, and the contracting officer's findings.  *See* AR 38-542.  Effective January 7, 2010, to place a requirement on the AbilityOne Procurement List, the contracting officer's contract file "must include market research results and supporting documents indicating no SDVOSB or VOSB is available to satisfy the specific requirement at fair market pricing."  *Id.* The contracting officer's determination and findings must also indicate that no SDVOSB or VOSB is available to fulfill the requirement at fair market pricing.  *Id.*

      Additionally, the contract file must be reviewed by the head of the respective contracting activity or appropriate designee, the Department's Office of Small Business Utilization, and the Senior Procurement Executive.  AR 38-542.  The Department's Chief Acquisition Officer must then approve the new item for the AbilityOne Procurement List.  *Id.*  Under the New Guidelines, no discussion with AbilityOne or its non-profit agencies, such as NISH, should take place before the Chief Acquisition Officer gives his or her written approval.  *Id.*

### C. *The Contracting Officer's Actions*

      Ms. Jones did not follow the New Guidelines.  Apart from issuing the sources sought notification, she did not conduct market research to determine if appropriate SDVO or VO small businesses were available to fulfill the requirement.  *See* Jones Dep. 10:13-10:20, 11:19-11:22, 17:10-17:14, 29:2-29:19.  The contract file does not include market research results or supporting documents regarding the availability of SDVO or VO small businesses to perform the desired services.  *See* Jones Dep. 30:16-31:1, 45:19-45:25, 57:15-58:4.  There are no pertinent determinations, and there are no findings indicating whether SDVO and VO small businesses were available to fulfill the requirement.

      Furthermore, the Department did not obtain written approval from the Chief Acquisition Officer before placing the laundry requirement on the list.  *See* AR 29-450 to 451 (Justification and Approval for Other Than Full and Open Competition).  There is no indication that the contract file was reviewed by the head of the respective contract activity or an appropriate designee, the Department's Office of Small Business Utilization, or the Senior Procurement Executive.  In addition, the contracting officer had repeated contact with NISH despite not having acquired the approval of the Chief Acquisition Officer.  *See, e.g.*, Jones Dep. 57:11-

---

[8]Notwithstanding this e-mail dated February 4, 2010, Ms. Jones inconsistently testified in her deposition that she became specifically aware of the new acquisition guidelines in May 2010. *See* Jones Dep. 52:13-52:22.

57:14; AR 9-177 to 178, 22-275 to 310, 22-312, 22-319.

Although the Department's New Guidelines were not followed, the services Angelica had performed were proposed for and then on August 13, 2010, placed on the AbilityOne Procurement List, with an effective date of September 13, 2010. *See* AR 22-379 (E-mail from George Patterson to Robin Jones (Aug. 13, 2010)). Placement on the AbilityOne list requires the Department to purchase those laundry services through a qualifying non-profit agency – in this instance, NISH. *See* 41 U.S.C. § 48.

### D. *GAO Proceeding*

Angelica filed a protest with the Government Accountability Office ("GAO") on May 21, 2010, contesting the legality of the Department's decision to invoke FAR § 52.217-8 to extend its contracting with Angelica and provide time to place the services on the AbilityOne List. AR 16-233 to 242 (Protest of Angelica Textile Services (May 21, 2010)). GAO dismissed the protest prior to the administrative record being filed, stating that "we may dismiss a protest that is frivolous or which, on its face, does not state a valid basis for protest." AR 21-269 (GAO Decision B-402907 (July 2, 2010)) (internal quotation omitted). GAO held that "[t]here is nothing improper in a procuring agency's compliance with the [Javits-Wagner-O'Day] Act and its implementing regulations" and noted that "Angelica's assertion that it was 'misled' as to the underlying basis for the [contract] extension ignores the fact that Angelica was contractually bound to perform the contract extension." *Id.* GAO did not consider whether the Department had complied with the Veterans Benefits Act and its associated regulations. *See* AR 21-267 to 270.

## JURISDICTION

### A. *Tucker Act*

A jurisdictional question arises at the outset. The court's ability to consider this protest under the third prong of 28 U.S.C. § 1491(b) has not been questioned. However, whether the court may grant effective relief is at issue. The remedy Angelica seeks is to have the laundry services procurement removed from the AbilityOne Procurement List. The government contends that the court lacks juridical power to grant equitable relief removing an item from the list. *See* Def.'s Resp. to Pl.'s Post-Hearing Br. ("Def.'s Post-Hearing Br.") at 2-6.

Angelica raises two objections to the Department's actions in the procurement. First, it contends that the Department contravened FAR § 52.217-8 in extending its contract for a six-month period. Second, it asserts that the Department's initiative in having the pertinent services placed on the AbilityOne Procurement List was arbitrary and capricious because those actions failed to comply with the Department's New Guidelines for implementing the Veterans Benefits Act, and entities qualifying under the Veterans Benefits Act have priority over AbilityOne entities, at least insofar as the Department's procurements are concerned. *See* Pl.'s Cross-Mot. for Judgment ("Pl.'s Cross-Mot.") at 8, 17. Both contentions in essence relate to the contracting officer's actions in obtaining enough time to pursue the AbilityOne listing on a relatively

expedited basis, while still maintaining Angelica's performance of the essential laundry services at the six pertinent veteran's hospitals.

Angelica's challenges are made "in connection with" the Department's procurement of laundry services for the veteran's hospitals within the meaning of the third prong of Section 1491(b)(1). 28 U.S.C. § 1491(b)(1). The phrase "'in connection with' is very sweeping in scope." *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). Where "an agency's actions under a statute so clearly affect the award and performance of a contract," a court should have "little difficulty concluding that that statute has a 'connection with a procurement.'" *Id.* at 1289. In this context, the meaning of "procurement" in 28 U.S.C. § 1491(b)(1) tracks the broad definition of the term in 41 U.S.C. § 403(2). *See Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008). Under this definition, a procurement "includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with the contract completion and closeout." 41 U.S.C. § 403(2). In this instance, therefore, the contested actions of the contracting officer are manifestly part of a procurement process for the laundry services and thus fall within the jurisdictional ambit of 28 U.S.C. § 1491(b)(1).

On its face and as interpreted by *RAMCOR* and *Distributed Solutions*, Section 1491(b)(1) grants the court jurisdiction to issue the remedy Angelica requests. However, the government maintains that any removal of items from the AbilityOne Procurement List is beyond the power of the court because the Javits-Wagner-O'Day Act, 41 U.S.C. § 47(a)(2), lays out a specific procedure for how the AbilityOne Procurement List may be changed. Section 47(a)(2) provides, "The Committee [for Purchase From People Who Are Blind or Severely Disabled] may, by rule made in accordance with the requirements of [5 U.S.C. § 553(b)-(e)], add to and remove from the procurement list commodities so produced and services so provided." The government argues that because additions to and deletions from the list made pursuant to 5 U.S.C. § 553 are subject to judicial review under the Administrative Procedure Act ("APA"), this court does not have jurisdiction to alter or affect such additions or deletions because it has no independent federal-question jurisdiction under 28 U.S.C. § 1331 to conduct such a review. *See* Def.'s Post-Hearing Br. at 2 (citing *HLI Lordship Indus., Inc. v. Comm. for Purchase from the Blind and Other Severely Handicapped*, 791 F.2d 1136, 1138 (4th Cir. 1986)).[9] The government thus asserts that the rulemaking provisions of the Javits-Wagner-O'Day Act in effect supersede and displace the statutory grant of authority to this court in 28 U.S.C. § 1491(b)(1).

For its argument that the rulemaking provisions of the Javits-Wagner-O'Day Act implicitly repeal the jurisdictional grant in the third prong of 28 U.S.C. § 1491(b)(1), the government relies on the canon of construction that "even where Congress has not expressly

---

[9]28 U.S.C. § 1331 provides that: "District courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." An independent action for review under the APA of a rulemaking by the Committee would be premised on this federal question jurisdiction and would therefore be brought in a federal district court. *See McGregor Printing Corp. v. Kemp*, 20 F.3d 1188 (D.C. Cir. 1994) (addressing on appeal a district court's action in conducting such a review); *Barrier Indus., Inc. v. Eckard*, 584 F.2d 1074 (D.C. Cir. 1978) (same) (op. by Markey, C. J., Fed. Cir., sitting by designation).

stated that statutory jurisdiction is 'exclusive,' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by the statute." *Telecommunications Research & Action Ctr. v. Fed. Commc'ns Comm'n*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see* Def.'s Post-Hearing Br. at 3. The government invokes the canon of construction that "a precisely drawn, detailed statute pre-empts more general remedies." Def.'s Post-Hearing Br. at 3 (quoting *Brown v. General Servs. Admin.*, 425 U.S. 820, 834 (1976)).

The government faces headwinds based upon the presumption against finding an implied repeal or displacement of a statute by another statute. *See Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 189-90 (1978); *Miccosukee Tribe of Indians of Florida v. United States Army Corps of Eng'rs*, __ F.3d __, __, 2010 WL 3581910, at *7 (11th Cir. 2010). "[I]f any interpretation permits both statutes to stand, the court must adopt that interpretation, 'absent a clearly expressed congressional intention to the contrary.'" *Miccosukee Tribe*, __ F.3d at __, 2010 WL 358190, at *7 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)). In *Brown*, for example, congressional hearings on the relevant statute revealed Congress' "unambiguous . . . perception" that no other remedy for racial discrimination among federal employees was available. 425 U.S. at 828. That perception demonstrated "the congressional intent . . . to [create] an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829.

In this instance, it is not readily apparent that the rulemaking provisions of the Javits-Wagner-O'Day Act actually conflict with the protest authority embodied in the third prong of Section 1491(b)(1). Both could function equally well, so long as each kept to its own sphere of influence. The government's argument, however, seeks to expand the effect of the rulemaking provisions of the Javits-Wagner-O'Day Act to reach also judicial review of such rulemaking, which review jurisdictionally depends upon other general statutory provisions, *viz.*, the federal-question jurisdictional statute and the APA. As *Brown* counsels, the court should not manufacture a conflict where one naturally and ordinarily should not exist. The court consequently declines to adopt the government's unduly expansive approach and concludes that there is no real conflict between the two statutes.

Even if the court were to find that a conflict between the statutes exists, which it does not, a question would arise which statute controls. Two canons of construction are usually invoked in such circumstances. The first canon posits that "the later-enacted statute controls to the extent it conflicts with the earlier-enacted statute." *Miccosukee Tribe*, __ F.3d at __, 2010 WL 3581910, at *7 (citing *Nguyen v. United States*, 556 F.3d 1244, 1252-53 (11th Cir. 2009)). A second canon provides that "a specific statutory provision trumps a general one." *Id.* The government's argument rests on the second canon.

In this instance, however, even assuming a conflict, Section 47(a)(2) of the Javits-Wagner-O'Day Act could not have been intended as an implied repeal of part of this court's jurisdiction under 28 U.S.C. § 1491(b)(1). Section 47(a)(2) was last amended in 1971, *see* Pub. L. No. 92-28, 85 Stat. 77, 79-82 (June. 23, 1971), over twenty-five years before this court was granted jurisdiction over the third category of bid protest actions via the enactment of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874. Because Congress granted this court jurisdiction over the third category of bid

protests well after the Javits-Wagner-O'Day Act was last amended, there could be no reason to construe 41 U.S.C. § 47(a)(2) as a limitation on the court's jurisdiction under 28 U.S.C. § 1491(b)(1).  By enacting the rulemaking provisions of the Javits-Wagner-O'Day Act, Congress could not have intended to limit the scope of a statute that did not yet exist.  Accordingly, this court finds that it has jurisdiction to consider this dispute without constraint as to any equitable remedy that might be appropriate if a contravention of law is proven.

### B.  *Standing*

The government raises a second procedural objection, arguing that Angelica lacks standing to challenge whether the Department violated its own guidelines for recommending and addressing placement of the procurement on the AbilityOne Procurement List.  *See* Def.'s Resp. to Pl.'s Cross-Mot. ("Def.'s Resp.") at 5-6.  Under the Department's New Guidelines, a procurement should not be placed on the AbilityOne list if there is a SDVO or VO small business available to fulfill the requirement at fair market prices.  *See* AR 38-541 to 542. Because Angelica is neither a SDVOSB nor a VOSB, the government argues Angelica was not harmed by the contracting officer's failure to research and give priority to SDVOSBs and VOSBs regarding the laundry services procurement.  Def.'s Resp. at 5-6.

Angelica maintains that it has standing to challenge the AbilityOne listing because there was a substantial chance that it would have been awarded a contract to cover the period between the end of its original contract and the beginning of a longer-term follow-on contract, whether or not the follow-on contract was awarded to a SDVOSB, a VOSB, or NISH through the AbilityOne Procurement List.  *See* Hr'g Tr. 11:23-12:2, 44:5-44:12, 64:4-64:7 (Sept. 14, 2010). Angelica contends that Ms. Jones so delayed preparing for a follow-on contract that she could not have followed the Departmental guidelines and completed the process for awarding a new contract to a SDVOSB or VOSB, or for placing the item on the AbilityOne Procurement List, and developing a contract with NISH, before the contract extension under FAR § 52.217-8 expired.  *See* Hr'g Tr. 16:16-17:1 (Sept. 14, 2010); Jones Dep. 7:7-9:7 (discussing the length of time necessary to complete a reprocurement).

Angelica's argument finds support in fact.  The Department necessarily will require time beyond the six-month contract extension to arrange a follow-on contract.  As of September 14, 2010, the Department was negotiating a gap-filling contract for laundry services after the extension expired on September 30, 2010.  *See* Hr'g Tr. 44:5-44:12 (Sept. 14, 2010).

To establish standing in a bid protest action in this court, a petitioner must be an "interested party."  28 U.S.C. 1491(b)(1).  Interested parties are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *American Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also Distributed Solutions*, 539 F.3d at 1344; *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To establish a direct economic interest as a putative prospective bidder, a plaintiff must prove that it had a "substantial chance" of being awarded the contract or a contract.  *Labatt Food Serv., Inc. v. United States,* 577 F.3d 1375, 1378 (Fed. Cir. 2009); *Weeks Marine Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Rex Serv. Corp.,* 448 F.3d at 1308.

As the incumbent contractor performing satisfactory work and with resources already in place to meet the requirement, Angelica would have had a "substantial chance" of being awarded a contract of some duration, and it thus has a "direct economic interest" in the listing of the laundry services contract under the AbilityOne program.  Accordingly, Angelica has standing to object to the Department's failure to follow its New Guidelines implementing the Veterans Benefits Act.

## STANDARDS FOR DECISION

Under 28 U.S.C. § 1491(b)(4), this court's review of an agency's decision regarding a contractual solicitation or award is governed by the standards set forth in the APA, 5 U.S.C. § 706.[10]  Given this incorporation by reference, the court may set aside an agency contracting decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to application of factors governing equitable relief.  *See PGBA, LLC v. United States,* 389 F.3d 1219, 1224-28 (Fed. Cir. 2004).  Judicial review is limited to determining whether the agency's "decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment."  *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971), *abrogated in part by Califano v. Sanders,* 430 U.S. 99, 105 (1977) (abrogating *Overton Park* to the extent it recognized the APA as an independent grant of subject matter jurisdiction).

An agency's decision will be upheld even if the court might have applied the procurement regulations in a different fashion had the court been in the agency's position.  *See Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C. Cir. 1971)); *Lumetra v. United States,* 84 Fed. Cl. 542, 549 (2008) ("[T]he court 'will not second guess the minutiae of the procurement process in such matters as technical ratings and the timing of various steps in the procurement.'" (quoting *E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed. Cir. 1996))).  A court must not "substitute its judgment for that of the agency," *Keeton Corrs., Inc. v. United States,* 59 Fed. Cl. 753, 755 (2004) (quoting *Overton Park,* 401 U.S. at 416), and it may overturn an agency's decision only if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Centech Group, Inc. v. United States,* 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

When a court reviews a challenge to agency action that is alleged to be arbitrary or capricious or an abuse of discretion, it is obliged to "determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Impresa Construzioni,* 238 F.3d at 1332-33 (quotation marks and citations omitted).  "[T]he disappointed bidder thus bears a heavy burden of showing that the award decision had no rational basis."  *Id.*  An agency's decision lacks a rational basis if the contracting officer "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to

---

[10]Section 1491(b)(4) of Title 28 provides: "In any action under [28 U.S.C. § 1491(b)], the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."

the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Keeton Corrs.,* 59 Fed. Cl. at 755 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). "When a challenge is brought on [a claimed contravention of law], the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Impresa Construzioni*, 238 F.3d at 1333 (quotation marks and citations omitted).

## ANALYSIS

### A.  *FAR § 52.217-8*

Angelica argues that the Department invoked FAR § 52.217-8 to extend its contract for an improper purpose, namely, to place the laundry services on the AbilityOne Procurement list. Pl.'s Resp. to Def.'s Cross-Mot. ("Pl.'s Resp.") at 4-6.  The government responds that the purpose for the extension is irrelevant and that the extension was fully permissible under Angelica's contract.  Hr'g Tr. 21:24 to 22:5 (Aug. 4, 2010).

Angelica's laundry services contract includes the Option to Extend Services clause, which appears in FAR § 52.217-8.  *See* AR 1-57 (Contract No. V247P-2121).  The clause provides: "The [g]overnment may require continued performance of any services within the limits and at the rates specified in the contract. . . .  [T]he total extension of performance hereunder shall not exceed 6 months.  The Contracting Officer may exercise the option by written notice to the Contractor within 30 days of contract expiration."  FAR § 52.217-8; AR 1-57.

FAR § 37.111 addresses how the extension option may be used.  It provides, "Award of contracts for recurring and continuing service requirements are often delayed due to circumstances beyond the control of contracting offices.  Examples of circumstances causing such delays are bid protests and alleged mistakes in bid.  In order to avoid negotiation of short extensions to existing contracts, the contracting officer may include an option clause . . . in solicitations and contracts which will enable the [g]overnment to require continued performance of any services within the limits and at the rates specified in the contract."  FAR § 37.111.

Angelica posits that the extension was not "delayed due to circumstances beyond the control of the contracting offices" because the delay in concluding a follow-on contract with NISH was due to the contracting officer's failure to begin the procurement process on time; Angelica argues that mandating a contract extension under FAR § 52.217-8 was therefore invalid.  Pl.'s Resp. at 5.  Although earlier in this dispute's proceedings Angelica argued that the contract extension had been made on the basis of a misrepresentation, Angelica has withdrawn its argument on that ground.  *See* Pl.'s Resp. at 4; Pl.'s Cross-Mot at 4-5.

The government contends in response that FAR § 37.111 does not provide an exhaustive list of the appropriate reasons to exercise the extension option and that NISH's interest in providing laundry services did create "circumstances beyond the control of the contracting offices."  Def.'s Cross-Mot. for Judgment ("Def.'s Cross-Mot.") at 9.

The plain language of FAR § 52.217-8 indicates that the government may unilaterally require a party to extend its performance of a contract. *See* FAR § 52.217-8 ("The [g]overnment may require continued performance . . . . The Contracting Officer may exercise the option by written notice . . . ."); *see also Arko Exec. Servs. v. United States*, 78 Fed. Cl. 420, 422 (2007) (describing a unilateral modification to exercise FAR § 52.217-8), *aff'd*, 553 F.3d 1375 (Fed. Cir. 2009). Had Angelica's contract been extended unilaterally, then Angelica might have had a good claim. However, the court need not decide whether the government invoked its power under FAR § 52.217-8 appropriately because Angelica accepted the contract extension.

Although Ms. Jones informed Angelica that their "contract [was] hereby extended for a period of performance through 30 September 2010," she further wrote that that a "bilateral modification . . . for this action will follow." AR 10-191. Angelica's representative, Jeff Hoffman, signed the modification agreement on March 26, 2010. AR 10-194. The contractual modification included neither a release of rights nor a reservation of rights, but a release was not necessary for Angelica to be bound by the agreement. *See Kanag'Iq Const. Co. v. United States*, 51 Fed. Cl. 38, 47 (2001) ("[T]he absence of an express provision regarding discharge does not preclude the finding of an accord." (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 n.4 (Fed. Cir. 1987))). The intent of the parties governs, and the court must examine the totality of the circumstances to determine that intent. *See Chesapeake & Potomac Tel. Co. of Virginia v. United States*, 654 F.2d 711, 716 (Ct. Cl. 1981). Angelica did not object to the contract extension when it was executed, and it has not proven that the government made any material misrepresentations in connection with the modification.[11] It only second-guessed the wisdom of its agreement upon learning that it would not be able to compete for the follow-on laundry services contract. Effectively, Angelica has asked the court to set aside an otherwise valid bilateral contract. The court declines to do so. As a result, Angelica's claims based upon FAR § 52.217-8 are unavailing.

## B. *Veterans Benefits Act*

Invoking the Veterans Benefit Act, Angelica contends that the Department "failed to adhere to law and its own regulations in proceeding with the transfer of the requirements currently performed by Angelica to the NISH/AbilityOne Procurement List." Pl.'s Cross-Mot. at 8. The government does not dispute that Ms. Jones failed to follow the Department's New Guidelines for addressing the competing contractual priorities found in the Veterans Benefits Act and the Javits-Wagner-O'Day Act. Rather, it urges the court to conclude Ms. Jones was not required to follow the New Guidelines because they were released several months after Ms. Jones had begun the laundry services procurement process. Hr'g Tr. 27:2-28:1, 29:5-29:14 (Sept. 14, 2010). The government further argues that the Ability One listing should not be voided because "[n]one of the procedures that the contracting officer . . . allegedly failed to satisfy are contained in the [Veterans Benefits Act]." Def.'s Resp. at 2. In short, the government argues that Ms. Jones was not obliged to follow the New Guidelines to the extent that they

---

[11]In contrast, when the plaintiff's contract in *Arko Executive Services* was extended unilaterally under FAR § 52.217-8, the plaintiff "informed the contracting officer that it would continue to provide . . . services, but would do so under protest." 78 Fed. Cl. at 422.

required action beyond that set forth in the Veterans Benefits Act and the VA Acquisition Regulations.

The government's first argument is defeated by the plain language of the New Guidelines. The guidelines announce that "*[e]ffective immediately*, all [Departmental] contracting officers . . . *must* follow the procedures set forth" "for gaining approval to request new requirements be placed on the AbilityOne Procurement List." AR 38-540 (emphasis added). No exception exempts placements that were being considered, but had not yet reached fruition, when the New Guidelines were issued on April 28, 2010.  The New Guidelines specify that they reach back in time to apply to all procurement actions after January 7, 2010.  *See* AR 38-541. Ms. Jones contemporaneously indicated her general awareness of the requirements of the New Guidelines in an e-mail she sent on February 4, 2010.  *See* AR 22-279 (E-mail from Robin Jones to George Patterson (Feb. 4, 2010)) (citing VAAR 819.7004).  Consequently, the government's timing argument has no persuasive force.

More complicated is the government's second argument, which in effect raises the general question of whether Ms. Jones' failure to follow the New Guidelines could be considered "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A).  At issue is the relationship between the Veterans Benefits Act, 38 U.S.C. §§ 8127-28, and the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 46-48(c), and the degree of deference the court owes to the Department's New Guidelines.

The Veterans Benefits Act's goal is to "increase contracting opportunities for small business concerns owned and controlled by veterans and . . . by veterans with service-connected disabilities."  38 U.S.C. § 8127(a)(1).  To that end, the Act directs the Secretary for Veterans Affairs to "maintain a database of small business concerns owned and controlled by veterans," 38 U.S.C. § 8127(f),[12] and to establish goals for SDVOSB and VOSB participation in Departmental contracts and to empower the Department to use noncompetitive procedures to award contracts implementing the Act's priority preferences, valued under $5,000,000.  38 U.S.C. § 8127(a)-(c).  The Act also allows the use of restricted competition if a contracting officer "has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States."  38 U.S.C. § 8127(d).  The final regulations implementing the Veterans Benefits Act became effective on January 7, 2010.  *See* 74 Fed. Reg. 64619-01 (Dec. 8, 2009).  The New Guidelines in effect pick up where the regulations left off, because they provide mandatory procedures for Departmental contracting officers and procurement officials to explore whether SDVOSB and VOSB entities are potential suppliers, in which instances they are to be accorded first priority over that provided by the Javits-Wagner-O'Day Act.

---

[12]Amendments to 38 U.S.C. § 8127(f) adopted by Pub. L. No. 111-275, § 104, 124 Stat. 2864, 2867 (Oct. 13, 2010), clarify the responsibilities of the Secretary in addressing and verifying applications for inclusion of small businesses owned or controlled by veterans on the database.

The Javits-Wagner-O'Day Act implements the government's policy of "increas[ing] employment and training opportunities for persons who are blind or have other severe disabilities through the purchase of commodities and services from qualified nonprofit agencies employing persons who are blind or have other severe disabilities." 41 C.F.R. § 51-1.1.  The Javits-Wagner-O'Day Act created the Committee for Purchase From People Who Are Blind or Severely Disabled, 41 U.S.C. § 46, which establishes the AbilityOne Procurement List, 41 U.S.C. § 47, and the Act essentially requires that services and commodities on the list must be procured by governmental agencies from a qualified nonprofit agency employing the blind or severely disabled.  41 U.S.C. § 48; 41 C.F.R. § 51-1.2.  To add new services to the AbilityOne Procurement List, one of the designated "central" nonprofit agencies, of which NISH is one, determines along with the relevant federal contracting activity the suitability of a proposed addition to the list.  41 C.F.R. § 51-3.2(c).  The Committee then considers the nonprofit's proposal, 41 C.F.R. § 51-2.4(a)(2) to (a)(3), and allows for notice and comment.  41 U.S.C. § 47(a)(2); 41 C.F.R. § 51-2.3.

The recent changes to the VA Acquisition Regulations did "not impact items on the AbilityOne [P]rocurement [L]ist or items that may be added to the procurement list in the future."  74 Fed. Reg. at 64622.  However, the Department's regulations issued under the Veterans Benefits Act are silent regarding whether the Department should give priority to SDVOSBs and VOSBs over adding *new* requirements to the AbilityOne Procurement List.  The New Guidelines fill that lacuna.  *See* AR 38-540 to 542.  The New Guidelines required a contracting officer to take a sequential series of steps before recommending a new requirement for the AbilityOne Procurement List, including researching whether SDVOSBs or VOSBs were available to fulfill the requirement.  *See id.*  Because Ms. Jones did not adhere to the New Guidelines, but rather worked with NISH to recommend that the Committee phase the services Angelica had performed onto the AbilityOne Procurement List, she intentionally sidestepped required procedure.

The government argues that Ms. Jones' omissions do not violate the Veterans Benefits Act because the Department's New Guidelines do not have the force of law.  Hr'g Tr. 26:23-27:1 (Sept. 14, 2010).  The government is correct in part — the guidelines do not have the force of law.  *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference.").  However, the inference that the government would have the court draw from that circumstance is not well taken.  The court may not, akin to Ms. Jones, simply ignore the New Guidelines.  Rather, the court must determine whether the New Guidelines are "entitled to respect" under *Skidmore v. Swift & Co.*, to the extent that they have the "power to persuade." 323 U.S. 134, 140 (1944).

The "limited form of deference" described in *Skidmore* considers "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore*, 323 U.S. at 140); *see also Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005) (Under *Skidmore*, a court must "defer to an agency interpretation of [a]

statute that it administers if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if we might not have adopted that construction without the benefit of the agency's analysis."); *Adde v. United States*, __ Fed. Cl. __, __, 2010 WL 3914707, *7 (Oct. 7, 2010) (same); *Statesman II Apartments v. United States*, 66 Fed. Cl. 608, 623 (2005) (same).

    *Skidmore* deference is warranted here. The Department is responsible for implementing the Veterans Benefits Act; indeed, it is the only federal department or agency to which the Act's requirements apply. The Department's New Guidelines provide detailed instructions to "fill[] a space" between the Veterans Benefits Act and Javits-Wagner-O'Day Act and their accompanying regulations. *Mead*, 522 U.S. at 229 ("Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in [a] statute or fills a space in the enacted law."). The New Guidelines reflect agency-wide policy and do not conflict with the Veterans Benefits Act, the Javits-Wagner-O'Day Act, or the VA Acquisition Regulations.

    Moreover, the Department's action in giving first priority to SDVO and VO small businesses is justified in light of the terms of the Veterans Benefits Act. It is a general maxim of statutory interpretation that a specific statute of specific intention takes precedence over a general statute, particularly when the specific statute was later enacted. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992); *NISH v. Rumsfeld*, 348 F.3d 1263, 1272 (10th Cir. 2003); *NISH v. Cohen*, 247 F.3d 197, 205 (4th Cir. 2001). Indeed, in other cases raising questions of the priority accorded nonprofit businesses operating under the Javits-Wagner-O'Day Act compared to a priority granted businesses operating under other acts, the priority under the Javits-Wagner-O'Day Act has given way. *See NISH v. Rumsfeld*, 348 F.3d at 1272 (holding that the cafeteria-priority provision of the Randolph-Shephard Act, 20 U.S.C. §§ 107-107f, has a higher priority for applicable procurements than that provided by the Javits-Wagner-O'Day Act); *NISH v. Cohen*, 247 F.3d at 204-06 (same). This case is no different. The Veterans Benefits Act is a specific mandate to the Department, and only to the Department, to grant first priority to SDVOSBs and VOSBs in the awarding of contracts. On the other hand, the Javits-Wagner-O'Day Act is a more general procurement statute. Were there a conflict between the two statutes, the more specific Veterans Benefits Act would control. *See NISH v. Rumsfeld*, 348 F.3d at 1272; *NISH v. Cohen*, 247 F.3d at 205. Where, as here, the statutes exist in tension, albeit not in direct conflict, the Department was entirely reasonable in concluding in its New Guidelines that the Veterans Benefits Act should have priority.

    In giving *Skidmore* deference to the Department's New Guidelines, the court concludes that the contracting officer's actions in contravention of them lacked a rational basis and were arbitrary and capricious. There is no "coherent" or "reasonable explanation" for why Ms. Jones "entirely failed to consider" the New Guidelines. *See Impresa Construzioni*, 238 F.3d at 1332-33; *Keeton Corrs.*, 59 Fed. Cl. at 755. Accordingly, the laundry services listing shall be elided from the AbilityOne Procurement List without prejudice against future placement.

C. *Equitable Relief*

As amended by the ADRA in 1996, the Tucker Act grants this court power to "award any relief" in a bid protest action "that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). The determination of whether injunctive relief is appropriate is left to the court's "equitable discretion." *PGBA*, 389 F.3d at 1225-26. In deciding whether an injunction should issue, the court should consider (1) whether the plaintiff has succeeded on the merits of the case, (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) whether it is in the public interest to grant injunctive relief. *Id*. at 1228-29.[13]

Angelica has plainly succeeded on the merits and demonstrated that it will lose the ability to compete for a contract if the court withholds injunctive relief. The public also has a strong interest in preserving the integrity of the procurement process. *See DGR Assocs., Inc. v. United States*, 94 Fed. Cl. 189, 211 (2010); *Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005). The court further finds that the balance of hardships favors an injunction. The parties have addressed this issue in terms of (1) the need for continuous provision of laundry services for the pertinent veterans hospitals, (2) the desirability of a prompt decision by the court to enable the Department to make an orderly provision for continuing laundry services, and (3) the fact that Angelica has maintained its staff and equipment to provide such services through extensions to its expiring contract. *See* Hr'g Tr. 6:5-6:10, 7:9-7:12 (Sept. 10, 2010); Hr'g Tr. 16:4-16:15 (Sept. 14, 2010). Because Angelica's infrastructure remains in place and able to provide critical laundry services to the pertinent veterans hospitals, issuing an injunction will not result in an interruption in services. Setting aside the AbilityOne placement will, therefore, not ineluctably result in a severe hardship for the veterans hospitals. The timeliness of this decision will allow the Department to arrange for the continuation of services without any hiatus. *See* Hr'g Tr 11:16-12:14 (Sept. 10, 2010).

Having considered each factor, the court finds that injunctive relief is warranted.

## CONCLUSION

Angelica's Motion for Permanent Injunction and Cross-Motion for Judgment on the Administrative Record are GRANTED. The government's Cross-Motion for Judgment on the Administrative Record is DENIED. Pursuant to 28 U.S.C. § 1491(b)(2), the Committee's listing of laundry services for the six Departmental veterans' hospitals in the southeastern United States is set aside and rescinded. The Department is enjoined from proceeding with contracting with NISH for the pertinent laundry services under the listing that is being set aside. The Department

---

[13]To support an award of equitable relief, Angelica is also required to show that the Departmental contracting officer's actions were based on significant errors and that those errors were prejudicial to Angelica. *See Bannum*, 404 F.3d at 1351; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). As described earlier, Angelica has made this requisite showing.

and its contracting officers and officials are also enjoined to follow and implement the New Guidelines in any follow-on procurement, excepting only a temporary contract to provide services for an interim period during which the Veterans Benefits Act and the New Guidelines are being implemented.

The clerk shall issue final judgment in accord with this opinion.  No costs.

It is so ORDERED.


s/ Charles F. Lettow_____
Charles F. Lettow
Judge